DALY *vs.* THE GEORGIA SOUTHERN AND FLORIDA RAILROAD
COMPANY *et al.*, and *vice versa.*

1. The mayor and council of the city of Macon have no power, under
the act of 1857, (acts 1857, p. 182,) to grant to a railroad company,
as an encroachment, a block of land eighty feet wide and four hun-
dred and eighty feet long in one of the city streets. Such a grant
would not be an encroachment, but a dedication of the larger part
of the street in this case for purposes entirely foreign to the object
for which the street was laid out. The true meaning of the act
of 1857 is to allow the grant of small encroachments to property-
holders along the length of the streets and on both sides thereof,
in order to narrow them.

(*a*) To allow the erection of a building eighty feet wide and four hun-
dred and eighty feet long in the street for a passenger or freight
depot, would be an obstruction and a nuisance, instead of an en-
croachment as contemplated by the act of 1857.

2. The act of 1857 gives authority to " permit and sanction encroach-
ments for a fair and reasonable compensation paid in money into
the city treasury." Under such authority, the mayor and council
did not have the power to make a donation of ten acres of land of
the city commons to a railroad corporation, and afterwards grant
to such corporation large encroachments upon a street of the city,
the consideration therefor being the return of the ten acres of land
to the city.

3. Even if the mayor and council had the power to grant the encroach-
ment, as they claimed to have, it appears in this case that they
did not have due regard to the interest of property-holders, who
were affected by their action, as required by the act of 1857. *Kirt-
land vs. Mayor etc. of Macon,* 66 *Ga.* 385, cited and distingushed.

4. It is improper and illegal for any member of a city council to vote
upon any question brought before the council in which he is per-
sonally interested.

5. A railroad company using steam motors cannot lay its tracks longi-
tudinally upon the streets of a town or city, without the sanction
of the legislature of the State; and this sanction must appear by
express grant or necessary implication.

6. The general clause in the charter of the city of Macon, giving it
power to control its streets, is not sufficient to authorize the grant
to a railroad company of the privilege of laying its tracks along its
streets.

7. Under the charter of the Georgia Southern and Florida Railroad
Company, authorizing it to build a railroad from Macon to Homers-
ville, etc., while such company may have the right to enter the
city of Macon, it must buy or condemn its right of way like indi-

viduals or other corporations.  The legislative authority, which is necessary before it can appropriate streets of a city, has not yet been granted.  The fee to the streets is in the State; and it is eminently proper that the right to use them for any other than the ordinary use should proceed from the legislature.  *Hazlehurst vs. Freeman,* 57 *Ga.* 244, cited and distinguished.

9. By the legislative grant to the Georgia Southern and Florida Railroad Company of the rights and privileges of the Central Railroad, authority was not conferred on the former to lay its tracks upon the streets of the city of Macon and run its engines over the same.

July 11, 1888.

Statutory construction.  Municipal corporations.  Encroachments.  Streets.  Railroads.  Before Judge RICHARD H. CLARK.  Bibb county.  At chambers, April 5, 1888.

Reported in the decision.

F. J. M. DALY, *in propria persona,* and LANIER & ANDERSON, for plaintiff.

GUERRY & HALL and BACON & RUTHERFORD, for defendants.

SIMMONS, Justice.

F. J. M. Daly, as trustee for his wife and children, and as guardian for Mary Dowd, and as a citizen and tax-payer of the city of Macon, filed his bill against the mayor and council of that city, against the Georgia Southern and Florida Railroad, and against the Macon Construction Company; in which he alleged that the mayor and council of the city of Macon had, by an ordinance or resolution, granted unto the railroad company, over the protest of the complainant and other tax-payers and property-holders of the city, an encroachment eighty feet wide and four hundred and eighty feet long on Fifth street, said encroachment being opposite the property owned by him as trustee, etc.; and that it would greatly injure and damage his property; that the tenants had given him no-

tice that they would give up the premises in case said en-
croachment was granted; and alleged other special damage
to him as a property-holder. He also complains that the
mayor and council granted the railroad company the right
to lay its tracks on said Fifth street, longitudinally, one
mile. He alleges that the mayor and council have no
power, under the charter of the city, either to grant the
encroachment or to authorize the railroad company to lay
its tracks longitudinally on said Fifth street; and that
even if the city had power to grant such encroachment, it
could only do so upon a money consideration, having due
regard to the rights of property-holders; that $5 is not such
a consideration, nor is the fact that the mayor and council
had prior thereto granted the railroad ten acres of land,
and the railroad company had agreed to return it to the
city, a sufficient consideration, under the act of 1857
Other allegations are made in the bill as to the mode and
manner of granting said privileges by the mayor and coun-
cil, over the protests of tax-payers and property-owners,
it being alleged that several of the aldermen, who voted
to grant said privileges, were disqualified from voting
thereon, because of their being stockholders in the Macon
Construction Company and said railroad company. The
bill also alleges that the railroad company had never been
authorized by the legislature to lay its tracks and run its
steam engines along said Fifth street, and that the mayor
and council could not grant, nor could the railroad com-
pany accept, such a privilege without special legislative
authority. Other allegations are made in regard to the
insolvency of the railroad company, and as to the com-
plainant's damages not having been first paid, etc.; which,
under the view we take of this case, it is unnecessary to
notice here.

The mayor and council answered the bill, and claimed
that they did have authority to grant the encroachment,
and to grant the privilege to the railroad company of lay-
ing its tracks longitudinally on said Fifth street. The rail-

road company and the Macon Construction Company also answered, but it is unnecessary to state the facts set out in their answers. It is also unnecessary to state the evidence contained in the affidavits read before the chancellor. Upon the hearing, the chancellor enjoined the mayor and council from granting the encroachment, and the railroad company from receiving it, and refused to enjoin the railroad company from laying its tracks on Fifth street. To the granting of the injunction the mayor and council excepted, and to the refusal to enjoin the railroad company from laying its tracks upon the street Daly excepted.

1. We think the chancellor was right in granting the injunction against the so-called encroachment. We do not think that under the act of 1857, (acts 1857, p. 182,) the mayor and council have the power or authority to grant such an encroachment as this. We do not think that the legislature, when it passed that act, contemplated that the mayor and council would have the right or authority, or would ever claim the right, to grant to a railroad company a block of land eighty feet wide and four hundred and eighty feet long in one of the busiest streets of the city. Our idea is, that the meaning of the act of 1857 is to allow them to grant small encroachments to property-holders along the whole length of the street and on both sides thereof, in order to narrow the streets. It was never contemplated that they should have power to grant an encroachment which would jut out eighty feet into the street and be an obstruction thereon. Such a grant as this was not an encroachment, but a dedication of the major part of the street for purposes entirely foreign to the object for which the street was laid out. And to allow the erection of a building eighty feet wide and four hundred and eighty feet long in the street for a passenger and freight depot, would be an obstruction instead of the encroachment contemplated by the act of 1857. It would obstruct nearly two-thirds of the width of the street, and would be a nuisance. " The king cannot license the erection or com-

Daly *vs.* The Georgia Southern and Florida Railroad Co. *et al.*, and *vice versa.*

mission of a nuisance; nor in this country can a municipal corporation do so by virtue of any implied or general powers. A building or other structure of like nature, erected upon a street without the sanction of the legislature, is a nuisance, and the local corporate authorities of the place cannot give a valid permission thus to occupy streets without express power to this end conferred upon them by charter or statute." Dillon on Munic. Corporations, §660. The power given by the legislature is, " to permit and sanction encroachments for a reasonable compensation in money, to be paid into the city treasury." Acts 1857, p. 182.

2. If the mayor and council make a donation of ten acres of land to a railroad corporation, and afterwards the railroad corporation returns the land to the city on condition that large encroachments upon its streets shall be granted to the corporation, is that a compliance with the act of 1857, under which the authority is given to " permit and sanction encroachments for a fair and reasonable compensation in money paid into the city treasury "? Did the legislature intend, when it passed this act, to give the mayor and council power to deal in real estate, by exchanging a portion of its streets for swamp land? Can the intention of the legislature, when it says " a fair and reasonable compensation in money," be circumvented by first giving away land on the common, and receiving it back in exchange for a portion of its streets? We think not.

3. Even if the mayor and council had the power to grant encroachments, we do not think that in this case they had due regard to the interest of property-holders who were affected by their action, as required by the act of 1857. This grant of eighty by four hundred and eighty feet not only affected the interests of property-holders on the same side of the street, but of property-holders on the opposite side, and affected their interest in such a way as that it would be almost impossible to arrive at a just compensation in damages to such owners. Where the encroach-

ment is granted, it destroys the symmetry of the street and the continuity of the sidewalk. Persons owning stores and doing business upon that side of the street next to the encroachment, would be deprived of all transient custom on the southwest end of the encroachment. The granting of the encroachment would further debar property-holders on the opposite side from obtaining any encroachment whatever, because an additional encroachment would virtually close the street. It therefore seems to us that the mayor and council, instead of having due regard to the property-holders, showed an absolute disregard of their rights in making this grant.

Counsel for the city and the railroad company relied in the argument upon the case of *Kirtland vs. the Mayor and Council of Macon*, 66 *Ga.* 385. A careful reading of that case will show that it is not in conflict with the view herein laid down. In that case, a small encroachment had been granted by the mayor and council twenty-five years before, and had been occupied by the parties on both sides of the street for that length of time, Kirtland enjoying this privilege equally with the other parties. The encroachment was small, as we have said, and had been given parties on both sides of the street. Strohecker undertook to build a house upon this encroachment, and Kirtland filed a bill undertaking to enjoin him, not because the mayor and council had no power to grant the encroachment, nor because the encroachment had been granted illegally, but on account of the obstruction of his view. The court denied the injunction, and he afterwards amended his bill, and asked for damages for the obstruction to his view; and that was really the case decided in 66 *Ga.*, *supra.* The street which had existed in that condition for twenty-five years, and which the public for that length of time had acquiesced in and accepted as the true street, was not in the slightest interfered with. The facts in this case are very different from the facts in that. Instead of a few feet being given, as in that case, here we have the

donation of nearly two-thirds of the street to build a freight depot. Instead of authorizing building upon what had been an enclosure for a quarter of a century, it is proposed to build upon an open and busy thoroughfare. The building is not to go on enclosures acquiesced in by property-holders on both sides of the street for years, but in the middle of the street, in front of the complainant's property, to the damage of the complainant, and over the protest of all parties interested.

4. Taking this view of the case, it is unnecessary for us to pass upon the legality of the action of the city council, more than to say that it is improper and illegal for any member of a city council to vote upon any question brought before the council in which he is personally interested.

This disposes of the bill of exceptions of the mayor and council and the railroad company. Daly excepted because the chancellor refused to enjoin the railroad company from laying its tracks on and along Fifth street.

5. There are some conflicting decisions in the earlier reports upon this subject; but we think the rule is now well-settled that a railroad company using steam motors cannot lay its track longitudinally upon the streets of a town or city without the sanction of the legislature of the State. Judge Dillon, in his admirable work on Municipal Corporations, Vol. 2, §724, in summing up his conclusion upon this subject, " after an examination of all the reported cases upon the subject of railways in streets," says: " As respects ordinary railways operated by steam, and street railways operated by horses, legislative authority is necessary to warrant them to be placed in streets or highways. The legislature may delegate to municipal or local bodies the right to grant or refuse such authority. The usual powers of a general nature in municipal corporations over streets are not sufficient to confer upon them the right to authorize the appropriation of streets by ordinary railroads, whose tracks are constructed in the usual manner and whose trains are propelled by steam." See also the

numerous authorities cited by him upon this subject; also 2 Woods' Railway Law, §273; *Kavanagh vs. Mobile & Girard R. R. Co.*, decided by this court at October term, 1886, 78 *Ga.* 271; Eichels *vs.* Evansville Street Rwy. Co., 41 Am. 561.

6. It becomes necessary, then, for us to inquire whether the legislature has granted this power to the mayor and council of Macon, or has granted this right to the railroad company. Learned counsel for the city and for the railroad contended that the general clause in the charter of the city, giving it the power to control the streets, was sufficient to authorize them to grant this privilege to the railroad. We have just seen, from the above quoted authority, that this is not sufficient. It must be an express power granted to the city, or one which arises from necessary implication. It is held by Judge Dillon—and he is sustained by the authorities—that the general powers given in charters to corporate authorities are not sufficient to authorize them to grant this privilege.

7. Counsel further contended that this power was granted in the charter of the railroad company; first, that the charter authorized the company to build a railroad from Macon to Homersville; secondly, that it granted to this company all the rights and privileges of the Central Railroad & Banking Company. They claimed that one of the rights and privileges granted to the Central Railroad & Banking Company, by the act of 1850, was to enter the city of Macon. We have carefully read these charters relied on by the learned counsel, and can find nothing contained in them granting, either expressly or by implication, the right to lay their tracks longitudinally in the streets. Counsel relied upon the case of *Hazelhurst vs. Freeman*, 52 *Ga.* 244, where this court held that the Macon & Brunswick Railroad, under its charter and amendments thereto, authorizing it to construct a railroad from the city of Brunswick to the city of Macon, and clothing it with the rights, privileges and immunities of the

Central railroad, was authorized to construct its road into the city of Macon and was not limited to the city lines; and that a private citizen could not enjoin it from appropriating ground for the location of its track because of its want of authority to come within the city lines. We do not doubt the correctness of that decision, nor do we doubt the right of this railroad company, under its charter, to enter the city of Macon; but we hold that when it does enter, it must enter according to law. It must buy or condemn its right of way like individuals or other corporations, or it must have the authority of the legislature before it can appropriate streets of the city which have been set apart by the city for the use of the public. The fee to the streets of the city of Macon is in the State. It is therefore eminently proper that the right to use them for any other than the ordinary use of streets should proceed from the legislature. District of Columbia *vs.* Baltimore & Potomac Railroad, 114 U. S. 461. The court, in the case of *Hazelhurst vs. Freeman,* does not decide that the Macon & Brunswick Railroad had a right to use the streets of the city in order to go within the city lines; but it simply decided that the company had a right to go within the city lines and to appropriate property under its charter for the purpose of getting in, and that the court below erred in holding that the railroad company could not appropriate property within the lines under its charter.

8. The legislature not having specifically granted this right to the Georgia Southern & Florida Railroad Company, in its charter, to occupy the streets of the city of Macon with its tracks and engines, did it grant the right to the railroad company by giving it all the rights and privileges that the Central Railroad had? Counsel for the railroad company contended that, under the act of 1850, authorizing the Central, Macon & Western and Southwestern Railroads to erect a depot in the city of Macon, the right to lay the tracks and run the engines over the streets is thereby given to this railroad company. We do

v 80-51

not agree with them in this contention. We have care-fully read this act, and we cannot find therein any right or privilege granted to the Central Railroad & Banking Company to occupy and use any of the streets in the city of Macon for their tracks and engines. On the contrary, the act of February 11th, 1850, expressly provides that they shall pay to the owners of property through which they may pass for whatever damages they may do to their premises, as provided for by the respective charters of the aforesaid companies. Acts 1849–50, 249. It seems to us that if the legislature had intended to put a new burden or use upon the streets of the city, they would certainly have said so in the act. We are strengthened in this view by the legislative history of the State in regard to street railroads and steam railroads entering the towns and cities thereof. We have examined numerous acts of the legis-·lature in former years, and in all of the acts we have found granting charters to street railroads, operated by horses, or ordinary railroads operated by steam, where they enter the streets of a city, the right to lay down their tracks in the streets is expressly granted. So far as we know, not even a horse-car company has ever attempted to lay its tracks upon the streets of a city in this State without leg-islative sanction. The law being that a municipal corpo-ration has no power to authorize a railroad company to lay its tracks and use its engines in the streets of the city without such legislative sanction, and there being no leg-islative grant to authorize the laying of the tracks of this company in the streets of the city of Macon, it follows that the chancellor erred in refusing to enjoin the railroad company from laying its track as complained of in this case. Entertaining these views, we deem it unnecessary to discuss the question of damages, which was so ably and elaborately argued by counsel on both sides.

The judgment as to the bill of exceptions of Daly is re·versed; and the judgment granting the injunction as against the encroachments is affirmed.