THE SAVANNAH AND WESTERN RAILROAD COMPANY *et al.*

*v.* WOODRUFF

1. After railways have been connected for nearly thirty years under a special act of the legislature providing for their connection in a city with the consent of the people thereof, the people having consented by popular vote cast within the year following the passage of the act, and the connection having been made within the next year after the vote was taken, no authority can be derived from the act for holding another election giving consent to the laying of additional side-tracks or turnouts on the streets of the city by one or more of the railway companies. When the connection was completed, with the side-tracks, etc. then constructed, the power conferred by the act to encroach on the streets was exhausted.

2. A temporary injunction restraining the construction of a side-track or turnout for a steam railway in the streets of a city, may be granted at the instance of a citizen alleging special damage to his real estate located in the vicinity of the nuisance, and though the

evidence be conflicting as to whether he will sustain special damage or not, the discretion of the judge in granting the injunction will not be controlled unless abused.

3. It is no legal bar to the injunction that the plaintiff may have acquired his title from collateral motives, and very recently before the work complained of began or was to begin.

November 10, 1890.

Injunctions. Railroads. Statutes. Elections. Municipal corporations. Streets. Nuisances. Before Judge SMITH. Muscogee county. At chambers, June 30, 1890.

Petition of Woodruff against the railroad company and the City Mills Company, for injunction against the construction of a side-track and turnout through streets of Columbus and near his property, alleging, among other things, that the mills company is about to erect a mill, and has combined with the railroad company for application to be made, and the consent of the mayor and council to be obtained, for the construction and operation of a side-track and turnout from the main line of the railroad through the streets to the lands of the mills company, which action would be unlawful, would injure the plaintiff's property to a large extent, and would make a public nuisance, an obstruction, a source of danger, etc. The authority for so building and operating, as set up in the answers, is stated in the opinion. It was denied that the side-track would in any way obstruct the streets or injure the plaintiff's property; and it was alleged that he had a mill to which it was found necessary to lay a side-track from the main line of another railroad company, for cheap and rapid transportation of products to and from it, which track was laid and is in constant use; that the nearest railroad to the property of the defendant mills company, from which freight could be delivered or received, is that of the defendant railroad company, from which such freight must be hauled in wagons for a considerable distance, passing directly in front of the plain-

tiff's property, but this hauling would be expensive and inconvenient and would place the City Mills Company at a disadvantage when compared with others having a railroad track; that under the act of the legislature of 1857, and the consent of the people by a vote, the consent of the mayor and council to the laying of the side-track in question was formally given on the 4th of June, 1890, the day before the petition for injunction was filed; that the plaintiff owned no property near this side-track until the 3d of June, 1890, and he then knew or could have known that the survey of the same had been begun, but he purchased for the purpose of filing the petition and damaging the City Mills Company and delaying it in the erection of its mill, knowing that it would be a strong competitor of his mill. It is ninety-two feet from the side-track in question to the nearest point on his property which he claims will be injured. The injunction was granted upon the condition that the plaintiff file his bond in the sum of $3,000, conditioned to pay all damages that might be recovered by the defendants for suing out this injunction. The defendants excepted.

PEABODY, BRANNON & HATCHER, for plaintiffs in error.
McNEILL & LEVY and C. E. BATTLE, *contra.*

BLECKLEY, Chief Justice.

1. Without legislative authority, the city government of Columbus could not authorize the construction and use of a side-track for a steam railway over and upon the public streets of the city. *Kavanagh* v. *R. R. Co.,* 78 *Ga.* 271; *Daly* v. *R. R. Co.,* 80 *Ga.* 793. The needful authority is sought to be derived from the act of 1857, and from a vote of the citizens taken under that act in 1887. The title of the act is " An Act to authorize the connection of the Muscogee Railroad with the Opelika Branch Railroad and the Mobile and Girard Railroad, at Columbus." Under this title the

preamble and enacting clauses are as follows: "Whereas, It would promote the interest and convenience of the people of Georgia and Alabama, as well as the public generally, to connect the Muscogee Railroad with the Opelika Branch Railroad and Mobile and Girard Railroad, *Be it enacted*, That the president and directors of said roads shall have the power of connecting their said roads by extending them through the city commons and streets of Columbus, with such side-tracks, turnouts and sheds as may be necessary for the convenience of freights and passengers. Provided, they first obtain the consent of the people of the city of Columbus, upon such terms as may be agreed on, and shall be satisfactory to them." Acts 1857, p. 73. It appears from the record that the connection provided for in this act took place in 1859, under a vote of the citizens cast under the act in the previous year. Since that time the rights and franchises of the Opelika Branch Railroad have devolved upon and become vested in the Savannah and Western Railroad Company, the plaintiff in error. Looking at the title of the act of 1857 above quoted, it is manifest that the whole purpose of that act was to provide once for all for connecting the several railroads therein mentioned. In so far as side-tracks, turnouts and sheds were embraced in and constituted a part of the scheme of connection, the act comprehended and provided for them. But that scheme was executed in 1859. And it seems plain to us that side-tracks, etc. which did not become necessary for the convenience of freights or passengers until 20 or 30 years thereafter could not have been in legislative contemplation when the act was passed. The much safer and more rational construction is, that the powers conferred by the act were exhausted by their exercise and by the consequent connection of the railroads as the result of the popular vote taken in 1859.

v 86-7

It cannot be that the work of connecting these rail-roads was not fully accomplished long ago. It cannot be regarded as a continuous and progressive work, not terminated in 1859 nor even within the long period since elapsed. The title of the act of 1857 is not broad enough to cover any side-tracks, turnouts, etc. which were not necessary as a part of the scheme of connection. To bring side-tracks, turnouts, etc. within the title of the act at all, they have to be treated as belonging to the scheme of connection. Without so treating them, the act as to them would be unconstitutional. The two votes taken under this act were separated by the period of almost a generation. To apply the act to the later of the two, would be to regard the work of making a connection as prolonged for the term of an ordinary lifetime. This court said in *Kavanagh* v. *R. R. Co., supra:* "It may be that, under this act of the legislature, a further consent of the people of Columbus might be given by them in a further vote to be taken, that such side-tracks might be laid down along said street." This was a mere suggestion of a possibility, the case then in hand not requiring any adjudication of the point. The present case brings the question directly under adjudication, and we have considered it on our responsibility as a court. Thus dealing with it, we think it should be answered unhesitatingly in the negative. An affirmative answer would require us to use the act as a mere color for authorizing a vote thirty years after the passage of the act and when a vote under it had already been taken within the next year after its passage. Our conclusion is, that the city council of Columbus had no power or authority to grant permission to the Savannah and Western Railroad Co. (plaintiff in error) to occupy the public streets with the side-track or turnout now in question.

2. In the absence of legal authority for placing and

using this structure in the public streets, the same would be a public nuisance. And under the evidence in the record, we think the judge did not abuse his discretion in granting a temporary injunction at the intance of Woodruff, the owner of real estate in the immediate vicinity. The injunction was granted upon terms, bond and security to answer for any resulting damages being required of Woodruff before the injunction would become effective. Whether he would sustain special damage or not from this threatened public nuisance, is a question for trial, under our practice, by a jury. Usually such a question may be dealt with on applications for temporary injunctions according to the sound discretion of the judge. He will not be controlled by this court, where no abuse of his discretion appears. *Cohen* v. *The Bank,* 81 *Ga.* 723.

3. The motive of Woodruff for purchasing the real estate which he seeks to protect, or the recency of his purchase, can have no influence on his legal rights as owner of the property. It is no answer by one who is about to erect a public nuisance, that the citizen complaining of special damage would not have been injured if he had abstained from making so late a purchase, or if his motive for purchasing had been more disinterested. We do not say that these matters should have no weight upon the mind of the judge in shaping his discretionary action upon the application for injunction, but only that they present no legal bar to the exercise of his discretion favorably to the applicant.

*Judgment affirmed.*