GUSTIN, GUERRY & HALL and DESSAU & BARTLETT, for
defendant.

---

DAVIS v. THE EAST TENN., VA. & GA. RAILWAY CO.

1. Neither by express grant nor by necessary implication has the
East Tennessee, Virginia & Georgia Railway Company any au-
thority to construct and operate its railway longitudinally upon
the public streets of the city of Macon.
2. In an action by the owner of abutting property against the com-
pany for damage to the freehold and for diminishing the annual
value of the premises for use, there can be no recovery as to the
freehold where the market value has been increased; but as to the
latter, there may be a recovery notwithstanding such increase in
the market value. A wrong-doer cannot set off increase of market
value caused by his wrongful act against loss of rents and profits
occasioned thereby.
3. Evidence as to a matter not covered by the declaration is not ad-
missible.

July 13, 1891.

Railroads. Streets. Damages. Set-off. Evidence.
Before Judge MILLER. Bibb superior court. April ad-
journed term, 1890.

Ellen Davis sued for damages, alleging that she was the owner of certain wharf lots fronting on a street in Macon and running back to the river, and was entitled to the free and unobstructed use of the street, which was the only mode of approach to her lot and was laid out by legal authority, especially with the view to giving such approach; that in her purchase of the lot she relied upon the free and unobstructed use of it as one of the elements of value, and such use was one of the appurtenances granted to her in the purchase; that so relying she had caused to be placed on the property valuable improvements for manufacturing purposes for which it was especially valuable and available; that the railroad company had wrongfully and utterly deprived her of the use of the lot, having laid two tracks on the side of the street nearest her property, one of them within four feet of the sidewalk, which are constantly in use and render approach to the property by any vehicle difficult, dangerous, and at times impossible; and that by such wrongful and illegal acts the annual value of the property is decreased $200 and its actual cash value $1,500. The verdict was for the defendant, and the plaintiff excepted to the denial of a new trial.

GUSTIN, GUERRY, & HALL, for plaintiff.

BACON & RUTHERFORD, for defendant.

BLECKLEY, Chief Justice.

1. The Macon and Brunswick railroad, extending from Macon to Brunswick, was the property of the State. By virtue of certain acts passed in 1879, it was first leased and then sold to a company which one of these acts incorporated by the name of the Macon & Brunswick Railroad Company. See Acts of 1878–9, pp. 115–122. The 12th section of that act contains these clauses: that the lessee company which the act provides for "shall have full power and authority to survey, lay out, construct, equip, use and enjoy a railroad

from the city of Macon to the city of Atlanta," and divers others, "and shall further have power and authority to connect said roads, or either of them, at each terminus, with the roads of other companies constructed to said terminus or which may hereafter be constructed to the said terminus." The 13th section requires the company, or the lessees, to "proceed within one year or less time, after the date of the execution of said lease, to build and put in good running order a railroad of five feet gauge, or the same gauge with the Macon and Brunswick railroad, between the city of Macon in the county of Bibb, and the city of Atlanta in the county of Fulton, and finish the same within five years from the execution of said lease, with the right to unite their tracks with the tracks of the roads now built, or that may hereafter be built into said cities, by which cars may be transferred, without breaking bulk or detention, from road to road at said cities." The evidence in the record indicates that the railroad from Macon to Atlanta was constructed by the Macon & Brunswick Railroad Company under and by virtue of these statutory provisions, and that with the consent of the municipal government of the city of Macon, a part of the line was located and constructed along Wharf street, one of the public streets of the city. This occupation of the street was in pursuance of a contract between the company and the city authorities by which the company agreed to pay to the city $2,000.00 per annum for the privilege, and this payment has been regularly made from year to year. The main line along the street had already been constructed and was in use when the plaintiff, Mrs. Davis, in 1884, purchased two city lots abutting on the street. These lots she improved by erecting upon them a dwelling-house and a blacksmith, carriage and paint shop, afterwards used for carrying on a carriage and wagon manufacturing

and repairing business. The evidence indicates that after the plaintiff purchased and her occupancy commenced, the main track was removed from its original position and placed several feet nearer to her property, and also that a second, or side-track, was constructed in front of her premises. The defendant is the successor of the Macon & Brunswick Railroad Company and has all its rights and privileges, including the right, if any, to occupy and use the street in question as a location for its line of railway. The first question is, whether its occupation of this street is lawful or unlawful. It was settled by the decision of this court in the case of *Daly* v. *Georgia Southern & Florida Railroad Co.*, 80 *Ga.* 793, that power to authorize the public streets of the city of Macon to be occupied and used as the route of a steam railway resides exclusively in the legislature of the State, and that the municipal government is without authority to grant such a privilege to a railway company. No express grant by the legislature to the defendant or to any of its predecessors has been produced. The code declares in section 719: "Public highways, bridges or ferries cannot be appropriated to railroads, plank-roads, or any other species of road, unless express authority is granted by some constitutional provision of their charter." Highways, in the broad sense, include streets. Elliott on Roads & Streets, 1, 2, 12, 13 ; 1 Abbott's Law Dic. 562 ; 1 Bouvier's Law Dic. 750 ; 2 *Id.* 672 ; Anderson's Law Dic. 981 ; 9 Am. & Eng Enc. of Law, 362. This section of the code had its origin in the code of 1863, and was of force when the above quoted legislation was enacted in 1879. Construing it as applying to streets as well as to public roads in the country, it would be decisive against any implied grant of authority to build a railroad along Wharf street in the city of Macon, however strong any implication of such authority might be.

This court, in *Atlantic & Gulf R. R. Co.* v. *Mann,* 43 *Ga.* 200, appears to have treated the matter of the section as probably applying to the streets of a town. But without ruling definitely on this question, we can rest our decision in the present case on the general doctrine that no authority not granted in express terms would exist unless it arose by necessary implication. "Though 'the grant of land for one public use must yield to that of another more urgent,' and though 'every grant of power is intended to be efficacious and beneficial, and to accomplish its declared object, and carries with it such incidental powers as are requisite to its exercise,' yet 'when it is the intention of the legislature to grant a power to take land already appropriated to another public use, such intention must be shown by express words, or by necessary implication.' Therefore, the mere grant of a charter right to build a railroad between two points, does not carry with it, by necessary implication, the right to occupy longitudinally a highway lying in the general route contemplated, unless the topography of the ground be such (as, for instance, the Notch of the White Mountains) as to physically preclude a location, by reasonable intendment, to have been designed on any other line." Rorer on Railroads, 502. See, also, *Daly* v. *Railroad Co., supra.* Nothing appears on the face of the legislation itself, nor from any evidence in the record before us, tending to show that it would be necessary to use any public street in order to construct a railroad from the city of Macon to the city of Atlanta, or to connect it with any other road at Macon, including the road from Macon to Brunswick, or to unite its tracks with that and other roads terminating in said city so that cars could be transferred from road to road without detention or breaking bulk. That to accomplish these objects some, and perhaps many, of the streets would have to be crossed, is a neces-

v 87-39

sary implication, and the presence of that serves to furnish a good example of what a necessary implication is Authority to run a railroad through a city involves in its terms the privilege of crossing the streets, but not of occupying them longitudinally. The act of 1850 conferred upon the Central railroad and the Macon & Western railroad authority to unite their tracks in one common depot within the city of Macon; but as construed by this court in *Daly's* case, *supra*, the act did not by implication grant any right of using the public streets for the purpose. Indeed, nothing is more manifest than that, under ordinary conditions, roads may pass through cities and make connections, one line with another, without appropriating to themselves any of the streets used by the public. The only necessary encroachments upon the streets would be to cross and recross them, sometimes at one angle, and sometimes at another. When it is the intention of the legislature to allow steam railways to occupy or appropriate the public streets or highways, it is easy to say so; and where the intention is left the least doubtful, the doubt must be given in favor of the general public and against the railway corporation. There is always a strong presumption that public property, or property already devoted to public use, is intended to remain intact, and not be converted in whole or in part to another public use. *Mayor of Atlanta* v. *Central R. R. Co.*, 53 *Ga.* 120.

The case of *Wood* v. *Macon & Brunswick R. Co.*, 68 *Ga.* 539, involved no question as to the appropriation of highways or streets. It concerned the location of the railway along the river bank through a plat of ground to which the city had title, and which the city, not the State, had dedicated to public use as a cemetery. The ruling of this court was that the city, without express authority from the legislature, could devote a part of

the ground not actually used for burial nor adapted to that use, to another public purpose, to wit, the location of the track and roadway of this railroad. The court also held, in effect, that construing the legislation which we have quoted above in the light of the special facts disclosed in the record of that case, that legislation conferred the requisite authority by necessary implication, so far as any authority was needed from the legislature. The title to the public streets of Macon is not in the city, but in the State; the State, not the city, has dedicated them to public use; and that part of Wharf street now in question was, it may be assumed, in actual use by the public as a highway both in 1879, when this legislation took place, and afterwards when the city undertook to change the original dedication in part by consenting to the occupation of the street as the route of a steam railway. Had *Wood's* case related to one of the streets of the city instead of to the river margin of the cemetery grounds, the decision would doubtless have been different. Indeed, it must have been different if streets are highways within the meaning and intent of section 719 of the code.

It follows from what we have said that the defendant must be treated as occupying Wharf street with its railway without legal authority; and consequently, that the law of nuisance, and not the law of assessment for property taken or damaged by the exercise of the right of eminent domain, applies between the parties in the present controversy.

2. The scope of the plaintiff's action embraces two classes of damage: damage to the *corpus* or freehold, and damage by diminishing the annual value of the premises for use. The evidence shows very conclusively that the market value of the property was increased, rather than diminished, by the location and use of the railroad in the street. The plaintiff can recover nothing

DAVIS v. EAST TENN. RAILWAY CO. [87 Ga.

on that score for the reason, if for no other, that she proved no damage of that class. But the evidence did tend to show that she had sustained damage by the diminished annual value of the premises for use in their present condition. The court in its charge to the jury seems not to have recognized this element as a basis for recovery. We think this was error. A wrong-doer cannot set off increase of market value caused by his unlawful act against loss of rents and profits occasioned thereby. Marcy v. Fries, 18 Kan. 353; Francis v. Schoellkopf, 53 N. Y. 153; Gurrish v. New Market Man. Co., 10 N. H. 478. Injury to rental value is, or may be, separate and distinct from injury to market value. The measure of damages in an action for a nuisance affecting real estate is not simply the depreciation of the property. Baltimore & Potomac R. Co. v. Fifth Baptist Church, 108 U. S. 317. The owner of property is entitled to use it in its present condition, and one who unlawfully hinders, obstructs or interferes with such use, cannot appeal to the increased market value which might be realized if the property were devoted to other purposes, and take credit for such increase by way of indirect set-off against the direct loss or injury which he has occasioned. Nor would the purchase of the premises by the plaintiff after the road was located and constructed in the street be any reason why she might not recover damages of this class which she has actually sustained. Glover v. Manhattan R. Co., 1 N. Y. Supr. Ct. 1; Werfelman v. Manhattan R. Co., 11 N Y. Suppl. 66.

3. Under the declaration as we construe it, there was no error in excluding evidence "that the means of ingress to and egress from the property of plaintiff by a street on which said property is situated had been, by construction of the railroad of defendant in said street,

interfered with at a point two hundred feet, and that by reason of such interference, the property of plaintiff had been damaged." This is a somewhat obscure statement of what was offered to be proved; but if it means what we suppose, namely, that ingress and egress were impeded by an obstruction two hundred feet distant from the plaintiff's premises, the declaration seems to us not to cover it.

The court erred in not granting a new trial.

*Judgment reversed.*