# City of Chicago, et al., v. Chicago Terminal Transfer Railroad Co.

## Gen. No. 11,982.

1. PRACTICE AND PLEADING—*disregard of, may be ground for reversal.*    The action of the parties and of the trial court in disregarding the statutory requirements as to practice and pleading, might if taken advantage of in apt time, have been ground for reversal.

2. STREETS AND HIGHWAYS—*right of railroad companies to enter upon.*    A railroad company incorporated under chapter 114 of the Revised Statutes can cross any highway outside of cities and villages without further condition than that it shall not unnecessarily impair the usefulness of the highway.    It cannot construct its rail-

road upon or cross any street in any city or village without the assent of the corporation of such city or village.

3.  STREETS—*how grant of railroad company in, construed.*  Grants by municipal corporations of special privileges in its streets are to be strictly construed, and all doubts are to be resolved against the railroad company.

4.  STREETS—*grants to railroad companies in, may be conditional.* The grant of a power or privilege to a railroad company in a street may be made conditional.

5.  STREETS—*grant to railroad company in, construed.*  The power to cross certain streets with "one or more railroad tracks," construed not a continuing one but as having been exhausted by the construction of a single track.

*Mandamus* proceeding.  Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding.  Heard in this court at the October term, 1904.  Reversed.  Opinion filed June 15, 1905.

WILLIAM D. BARGE, for appellants; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

JESSE B. BARTON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal by the city of Chicago and the Commissioner of Public Works of said city from a judgment of the Superior Court of Cook county on a petition filed by the Chicago Terminal Transfer Railroad Company, entitled a "Petition for Mandamus," and praying that the said city and its Commissioner of Public Works "be compelled by the judgment or order of the court to grant to the petitioner permission to lay a second main track across 79th, 80th and 81st streets in said city of Chicago."

The order or decree appealed from is treated by the parties as an order awarding a peremptory writ of mandamus, and we shall so treat it.  It is in fact irregular for a mandamus proceeding.  It is rather in the nature of a mandatory injunction in chancery, whereas mandamus is strictly a common law remedy.

The order makes no mention of the issuance of a writ of mandamus, but after reciting the hearing of the cause on the petition, answer and "general replication" and on argument

by counsel, it directly "Orders and decrees that the said city of Chicago and said F. W. Blocki, Commissioner of Public Works of the city of Chicago, do permit the petitioner the Chicago Terminal Transfer Railroad Company to lay down, maintain and operate an additional main track across 79th street, 80th street and 81st street in the said city of Chicago within the exterior lines of its right of way as extended across said street."

To the petition in the cause a general demurrer was first interposed by the defendants, which, however, was withdrawn by them on their own motion. Thereupon they filed an answer, and to the answer the petitioner filed "a special replication," as it was entitled. (Strictly under the correct practice in mandamus, this special replication should have been denominated a plea to the answer.) It was demurred to by the defendants and the demurrer was sustained by the court. Then the petitioner asked and obtained leave to file "a general replication" to said answer. The replication filed was in the usual form of a general replication *in chancery*.

There is a bill of exceptions in the record reciting a stipulation by the parties that all the allegations of fact in the petition and answer are true, and that the facts are therein correctly set forth, and containing also an agreed statement of a further fact hereafter in this opinion recited. This bill of exceptions shows by implication (although it does not so appear otherwise in the record) that a jury was waived in this proceeding by the agreement of the parties and the cause submitted to the court on the issues raised by the petition, answer and stipulated facts; and as the statements of all of them are agreed to be true, the whole question is one of law. The hearing below was like that of a chancery cause on bill and answer. The cause having been so informally and irregularly treated by the parties and by the Superior Court, will in the interest of a speedy disposition of the merits of the matter be so treated by us, although as the Appellate Court of the Third District has said in a similar mandamus case, "the making up of the issues, as in a chancery proceeding, instead of adopting the practice

pointed out in the statute, was therefore an irregularity which if taken advantage of in apt time, might in a proper case be a good cause for reversal." Commissioners of Highway v. Gibson, 7 Ill. App. 231. We shall address ourselves in this cause, however, directly to the question, do the facts admitted by all parties to the controversy warrant an order on the city of Chicago and its officers to allow the action desired by the railroad company? In other words, has the railroad company under the conceded facts a clear legal right to lay another track over 79th, 80th and 81st streets?

The facts as they appear from the petition, answer and stipulation are these: May 13, 1872, the Common Council of the city of Chicago by ordinance gave permission and authority to the LaSalle and Chicago Railroad Company to lay down, maintain and operate "one or more railroad tracks along and upon the following named route and streets in the city of Chicago, to-wit: Commencing at the western city limits adjacent to the right of way of the Chicago, Burlington and Quincy Railroad Company, thence as near as practicable to the said Chicago, Burlington and Quincy Railroad tracks to Rebecca street, thence on the south half of Rebecca street to or near the east end of Rebecca street, thence to Meagher street, thence on the south side of Meagher street (and on the alleys between Johnson and Halsted streets, running on a line nearly due west of Meagher street) and across Meagher street to Stewart avenue, thence north on Stewart avenue and Beach street to Harrison street, thence north across Harrison street on the east side of the tracks of the Pittsburgh, Fort Wayne and Chicago Railroad Company, on any property said LaSalle and Chicago Railroad Company may acquire by purchase, condemnation or otherwise, to the south line of West Adams street, provided that the LaSalle and Chicago Railroad Company shall not in entering the city occupy or cross the depot grounds of another company."

The second section of said ordinance was as follows:

"Sec. 2.   The said railroad company may cross any and

all streets and alleys and railroad tracks upon or along the line of its said route. Said company to be subject to the directions of the board of public works of said city, in the construction of its said tracks and the keeping in repair of so much of said streets, alleys and crossings as may be occupied by said railroad company with its tracks, switches and turnouts."

Section five was as follows:

"Sec. 5. The said railroad company shall be subject to all general laws and ordinances of the common council of the said city, in relation to railroads."

The ordinance in its 10th section concluded as follows:

"Provided * * * This ordinance shall be null and void unless the tracks herein provided for shall be constructed within two years from the date of the passage hereof."

The LaSalle and Chicago Railroad Company having changed its name to the Chicago and Great Western Railroad Company, the City Council May 11, 1885, passed an amending ordinance recognizing this change in the first section, and proceeding as follows:

"Sec. 2. That in addition to the permission and authority given and granted to said company, in and by said original ordinance, and still held by said company to lay down tracks within said city, further permission and authority be and is hereby given and granted to said railroad company, to lay down, maintain and operate one or more railroad tracks with the necessary and convenient side-tracks, switches, and appurtenances over, upon and along such property as it now holds, or has acquired the right to lay tracks upon, or which it may hereafter acquire by purchase, condemnation or otherwise, over, along and upon the following route: Commencing at the west line of said city of Chicago, at some convenient point to be selected by said railroad company, between west Twelfth street and the line of West Polk street, extended west to the city limits; thence to

or near the tracks of the Pittsburg, Cincinnati & St. Louis, and the Chicago and Northwestern Railroads; thence southerly and easterly, and within six hundred (600) feet of the said last mentioned tracks to Wood street; thence easterly and between the tracks of the Chicago, Burlington and Quincy Railroad Company and the line of the alleys running east and west through the tier of blocks bounded on the north by West Fifteenth street to Morgan street; thence easterly and between the tracks of said Chicago, Burlington and Quincy Railroad, and the center line of the blocks bounded north by Wright street, to or near Stewart avenue; thence by such curves as may be necessary, and northerly and easterly, and between Canal street and Fifth avenue to Van Buren street on the west side, or Harrison street on the east side of the Chicago river; with a branch from said main line, at some convenient point between Rockwell and Leavitt streets, southerly to the city limits of the city of Chicago; provided, however, that not more than two of said main tracks with switches and side-tracks shall be laid longitudinally in any street or streets upon said original route, and that said tracks shall all be laid as near as practicable to the north end of the viaducts over Canal and Halsted streets and Blue Island and Center avenues.

Sec. 3.     The said railroad company may cross any and all railroad tracks, streets, alleys and highways upon or along the line of said route, but the permission and authority hereby granted shall be subject to all the limitations and conditions of the ordinance to which this is an amendment, except as the same may be expressly repealed by this amended ordinance.

Sec. 4.     The proviso contained in section 10 of said original ordinance is hereby repealed, and in lieu thereof it is hereby ordained that the said original ordinance and this amended ordinance shall be null and void, unless the tracks of said company shall be constructed from the terminal station at or near Harrison street to the southern or western limits of said city within three (3) years from the passage of this amended ordinance; said three years to be exclusive

of any and all delays arising from, or occasioned by legal proceedings against said company, or by the acts of said city of Chicago, its officers, agents and servants."

Within three years from May 11, 1885, the Chicago and Great Western Railroad Company had constructed its line of railroad, consisting of double main tracks with such side-tracks, switches and turnouts as were then needed, from the western limits of Chicago between the points referred to in the ordinance of May 11, 1885, easterly and southerly, and crossing Stewart avenue at or about Meagher street and within the limits prescribed in said ordinance, and thence easterly and northerly and across the south branch of the Chicago River to the corner of Fifth avenue and Harrison street.

In 1889 the Chicago and Northern Pacific Railroad Company was created and organized under the statutes of Illinois, and by deed dated March 11, 1890, acquired all the railway property and corporate rights and franchises of the Chicago & Great Western Railroad Company, and immediately thereafter went into possession of and operated the same.

July 20, 1891, the City Council of Chicago passed an ordinance providing for the erection of viaducts over the tracks of the Northern Pacific Railroad Company at Taylor street, 14th street and Ogden avenue, the fifth and seventh sections of which are as follms:

"Sec. 5.    That the obligations imposea upon and the privileges granted to said Chicago & Northern Pacific Railroad Company, as the successor of the Chicago & Great Western Railroad Company (formerly known as the LaSalle and Chicago Railroad Company) by an ordinance entitled 'An ordinance concerning the LaSalle and Chicago Railroad Company,' passed May 13, 1872, and the ordinance amendatory thereof, passed May 11, 1885, are hereby declared to be in full force and effect to the southern limits, of the city of Chicago as they now exist, but upon the same provisions and conditions as are contained in the said ordinance as amended

as aforesaid as if they were inserted herein; provided, however, that said Chicago & Northern Pacific Railroad Company shall not charge more than a five (5) cent fare upon suburban trains between Harrison street depot and the city limits at 95th street, and all intermediate stations, tickets for said fare to be purchased in packages of not less than twenty-five (25)."

"Sec. 7.    That this ordinance shall take effect and be in force from and after its passage and acceptance by said Chicago & Northern Pacific Railroad Company; provided, however, that the acceptance of this ordinance by said railroad company shall be considered and is hereby declared to be a contract on the part of said Chicago & Northern Pacific Railroad Company to perform the obligations herein imposed upon it and the performance of said obligations by said Chicago & Northern Pacific Railroad Company is hereby declared to be the consideration for the rights, privileges and property herein conferred upon said railroad company."

On September 14, 1891, the City Council amended section 5 merely by substituting "47th street" for the words "City limits at 95th street," and the ordinance as amended was accepted by the Chicago & Northern Pacific Railroad Company.

No ordinances bearing upon appellee's alleged right to construct, maintain or operate railroad tracks that cross or will cross 79th, 80th or 81st street have been enacted, except those above described, and except the general ordinance of the city of Chicago that no person shall open or disturb any street in said city without first obtaining a permit so to do from the Commissioner of Public Works of said city.

Within three years from July 20, 1891, the Chicago and Northern Pacific Railroad Company had constructed a double track railroad leaving its main line at a point between Rockwell and Leavitt streets and thence running southerly to 75th street, and a single main track railroad from 75th street to 87th street (being the southern city limits of Chicago), and thence running southerly to the village

of Blue Island and the city of Harvey in Cook county, with such side-tracks, turnouts and switches as were then necessary. The railroad so constructed has ever since been operated by the Chicago and Northern Pacific Railroad Company and its successor in title. The single main track from 75th to 87th street was laid on a strip of land not less than 66 feet in width, acquired as a right of way by the Chicago and Northern Pacific Railroad Company. Through a judicial foreclosure sale of all the properties, rights and franchises of the Chicago and Northern Pacific Railroad Company, the said properties, rights and franchises came into the ownership, possession and operation of the petitioner, the Chicago Terminal Transfer Railroad Company, July 1, 1897. Said ownership, possession and operation continued up to the filing of the petition in this cause.

The petition states (and as before set forth, it is stipulated that all the allegations of fact in the petition and answer are true) that at the time of the construction of said railroad double main tracks were sufficient to handle the business of said Chicago and Northern Pacific Railroad Company to a point between its terminal at or near Harrison street and Fifth avenue and a point near 75th street, and that a single main track was then sufficient to handle such business from said point at or near 75th street to the southern limits of the city, but that the increase of business on the said line of railroad and the demands of the public now require that an additional main track be laid parallel to and at the usual distance from said first main track and on the right of way so as aforesaid acquired from said point at or near 75th street south to the city limits.

April 21, 1904, the Chicago Terminal Transfer Railroad Company applied to F. W. Blocki, Commissioner of Public Works of the city of Chicago, for a permit to lay a second main track across said 79th street, 80th street and 81st street, within the limits of petitioner's right of way, such permit being required under the general ordinance before alluded to, that no street shall be disturbed without a permit therefor issued by the Commissioner of Public Works. The

Commissioner refused such permit, and in doing so repre-
sented the city of Chicago, which admits that it confirms said
denial. The city claims that said petitioner had no right or
authority to construct said proposed tracks across said streets,
and that the Commissioner of Public Works is without power
to authorize it to do so, and asserts that it has never author-
ized or consented to the construction of the proposed track.

Since May 11, 1888, that is, more than three years after
the passage of the ordinance of May 11, 1885, the city of
Chicago and its Commissioner of Public Works have issued
to the petitioner or to its predecessors in title permits to lay
additional tracks across streets at the times and places here-
inafter set forth, to-wit: across Washtenaw avenue, July 17,
1891; across West Fifteenth street, June 15, 1894; across
Newberry avenue, October 11, 1898; across Laflin street
and an adjacent alley, December 22, 1899; across Brown
street, December 28, 1899; and in, along and upon Beach
street from Polk street to 12th street, September 24, 1897.
Neither the petitioner nor any of its predecessors in title
have, however, ever constructed or operated more than one
railroad track across said 79th street, 80th street or 81st
street.

The appellant has assigned as error in the action of the
court below, the "awarding the writ of mandamus," and the
refusal to hold this proposition of law: "The petitioner is
not now entitled to a permit authorizing it to construct any
new track across 79th, 80th or 81st street."

It is plain that the answer to the question at issue between
the parties here depends entirely upon the proper construc-
tion to be given to language in the ordinance passed in favor
of the Chicago & Great Western Railroad Company May 11,
1885, and revived in favor of its successor, the Northern
Pacific Railroad Company, July 20, 1891.

By the statute law of the State, the city of Chicago and
all other cities and villages similarly organized, have full
authority to regulate the use of streets and to provide for
and change the location, grade and crossings of any railroad.

Although a railroad company incorporated like the peti-

tioner under chapter 114 of the Revised Statutes, can cross any highway outside of such cities and villages, without further condition than that it shall not unnecessarily impair the usefulness of the highway, it cannot construct its railroad upon or across any street in any such city or village without the assent of the corporation of such city, town or village.  The Supreme Court has repeatedly held that there is vested by these statutory provisions in incorporated cities and villages full and exclusive authority over the matter of railroad crossings in the streets and highways within their limits, and that the assent of the city is a condition precedent to the construction of any railroad track across a street within its limits.  Rev. Stat., chap. 24, sec. 63, pars. 25 & 26; chap. 114, sec. 20, par. 5; C. & W. Ind. R. R. Co. v. Dunbar, 100 Ill. 110-127; County of Cook v. G. W. R. R. Co. et al., 119 Ill. 218; Tudor v. Chicago & South Side Rapid Transit R. R. Co., 154 Ill. 129.  This consideration makes many of the authorities cited by appellee in its argument inapplicable, for there is a manifest difference between the right belonging to a railroad company to exercise a continuing power of acquiring more land on which to lay additional tracks, despite the statutory provision that its corporate existence and powers shall cease unless it is "finished and put in operation within ten years," and the alleged right claimed here under "the common law of the State," "to provide additional facilities when its increased traffic requires the same," by crossing with new tracks streets already crossed by tracks built within a time specified by a city ordinance.

In the one case the statute forfeits (if the road is not "finished and put in operation" within a certain time) a corporate existence before secured, and the language is construed, as language providing for such a forfeiture would always be, so as not to give to it an entirely unreasonable meaning and forfeit a franchise because the road, although in operation, is not so far finished as to make it certain that subsequent construction might not, in the future, seem desirable.  If the corporate existence is *not* forfeited, the power to condemn continues as a matter of course.

But in the other case, the city or village makes a grant of a special privilege in its streets, without which grant the railroad would be utterly powerless to cross them. The question, therefore, simply is,—what did the city grant? In answering it, the canons of construction require that the grant, which is by the public of a special privilege, should be strictly construed. If the meaning of the words be doubtful, they will be taken most strongly against the grantee. This is well expressed by the Supreme Court of the United States in Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24. It says: "By a familiar rule every public grant of property or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the public; because an intention on the part of the government, to grant to private persons or to a particular corporation property or rights in which the whole public is interested, can not be presumed unless unequivocally expressed or necessarily to be implied in the terms of the grant, and because the grant is supposed to be made at the solicitation of the grantee and to be drawn up by him or by his agents, and therefore the words used are to be treated as those of the grantee. This rule of construction is a wholesome safeguard of the interests of the public against any attempt of the grantee, by the insertion of ambiguous language, to take what could not be obtained by clear and express terms." See, also, City of Chester v. Wabash, C. & W. R. R. Co., 182 Ill. 382.

There is no doubt that the grant of a power or privilege may be made conditionally by the municipality. Byrne v. Chicago Gen. Ry. Co., 169 Ill. 75; McCartney v. C. & E. R. R. Co., 112 Ill. 611; Chester v. Wabash, C. & W. R. R. Co., 182 Ill. 382.

In this case the appellant claims that the right to cross 79th, 80th and 81st streets with railroad tracks was given to the appellee's predecessor on condition that all such tracks so crossing those streets should be built by it within three years from September 11, 1885, and at most was revived in favor of the Northern Pacific R. R. Co. July 20, 1891, for the three years next succeeding. The appellee, on the con-

trary, as we understand, claims that its predecessor in title was given on September 11, 1885, the right to lay down one or more railroad tracks (any number at least it is to be presumed that could be put into its right of way) between a point on its main line between Rockwell and Leavitt streets to the limits of Chicago on the south, and to cross with such tracks all streets and highways upon the line of said route, the condition being only that some track for said company should be laid from the Harrison street terminal to the southern or to the western limits of the city within three years thereafter.  Or if this cannot be sustained, it claims that at least by such ordinance its predecessor was given such right on the condition that some track was laid from the terminal to the southern limits within said three years, and that this right was revived and extended July 20, 1891, on the condition that some track was thus laid to the southern limits within three years from that time.  If only one track to the southern limits were thus laid before July 20, 1894, it would be enough, according to this interpretation, to render the ordinance an effective and continuing authority for all time to come to cross all streets along its route with as many tracks as it could place within the limits of the right of way it had acquired between said streets.

We think the appellants' interpretation of the ordinance the correct one.  The language in the ordinance of 1885 directly bearing on this question is this: "Permission and authority are hereby given and granted to said railroad company to lay down, maintain and operate one or more railroad tracks  *  *  *  upon and along such property as it now holds or has acquired the right to lay tracks upon, or which it may hereafter acquire  *  *  *  over, along and upon the following route  *  *  *  with a branch from said main line at some convenient point between Rockwell and Leavitt streets southerly to the city limits of the city of Chicago.  *  *  *  The said railroad company may cross any and all  *  *  *  streets, alleys and highways upon or along the line of said route, but the permission and authority hereby granted shall be subject to all the limita-

14

tions and conditions of the ordinance to which this is an amendment" (i. e., the ordinance of May 13, 1872), "except as the same may be expressly repealed by this amended ordinance. The proviso contained in Section 10 of said original ordinance is hereby repealed, and in lieu thereof it is hereby ordained that the said original ordinance and this amended ordinance shall be null and void, unless *the tracks* of said company shall be constructed from the terminal station at or near Harrison street to the southern or western limits of said city within three years from the passage of this amended ordinance." Viewed by itself, and under a construction liberal to the grantee, this language might easily be taken to mean what the appellee claims that it means—that all the provisions and permissions of the ordinance were to remain indefinitely in force, if only the implied promise on which it was obtained, namely, to have some sort of a railroad in operation from the Harrison street terminal to the city limits in three years were kept. But in the first place, the language ought not to be construed simply by itself and without reference to language elsewhere. The ordinance which it amends and to which it refers, is by that very reference made a proper element to be considered in the interpretation. In that ordinance the time provision, for which a substitute was made in the later one, was this: "This ordinance shall be null and void unless *the tracks herein provided for* shall be constructed within two years from the date of the passage thereof." We think it is a fair inference that by the first ordinance the council meant that the permission to lay tracks across streets should last only for two years from its passage, and that in reviving the permission thirteen years later, it meant merely to substitute a three years' limitation of the same nature for that of two years found in the earlier ordinance.

Secondly, the language must be construed strictly against the grantee, as we have seen.

Thirdly, the argument *ab inconvenienti* is entitled to some weight. It does not seem reasonable, and it certainly is not desirable that, because an ordinance at some time, when a

given section of the city is in a certain condition, gives to a railroad company the right to cross streets therein with "one or more railroad tracks," and one track is thereupon laid, therefore that railroad should have, indefinitely in the future, when conditions in the neighborhood have perhaps adapted themselves to the single track, the power to multiply several times the space taken by the crossing, and thereby the dangers incident thereto. It would seem, on the contrary, that the Council at all times should retain, except for reasonable periods in advance, the complete control of the streets, and that it should be to the Council that the railroad company should go for permission to provide its coveted "increased facilities."

We do not find among the cases cited by appellants any on all fours with the case at bar, but we think the decisions of the Supreme Court in People v. Louisville & N. R. R. Co., 120 Ill. 48, and Snell v. Chicago, 133 Ill. 413, are not without a bearing on the case at bar.

Speaking of an Act of the Legislature of Georgia authorizing the connection of two railroads through the streets of a city, "with such side tracks, turnouts and sheds as may be necessary for the convenience of freights and passengers," the Supreme Court of Georgia said: "It seems plain to us that side tracks, etc., which did not become necessary for the convenience of freights and passengers until twenty or thirty years thereafter, could not have been in legislative contemplation when the act was passed. The much safer and more rational construction is that the powers conferred by the act were exhausted by their exercise and by the consequent connection of the railroads." Savannah R. R. Co. v. Woodruff, 86 Ga. 94. This language seems in point in the present case. The City Council gave by its ordinance permission to make crossings on a given route with "one or more railroad tracks." When the company chose to make them with "one" and not "more," that particular permission may reasonably be said to have been exhausted.

The appellee urges that by their action in the past, the

city officials have shown that they put a construction on the ordinance of 1885 different from that which the city at present claims. This seems to be true, but anything less than an estoppel by the action of the city under this ordinance can not avail the appellee. Such estoppel is not claimed and could not under the facts be substantiated.

The claim of the appellant in the Reply Brief, that because the ordinance of 1885 provides that "it shall be null and void unless the *tracks*" (in the plural) are constructed within the time fixed, therefore it "requires the company to lay more than one track within three years or to go without any track," and that it therefore has lost the right to maintain its present track, is plainly without basis. The ordinance is for "one or more railroad tracks," and the words "the tracks" in the last section, mean also "the tracks, one or more."

The judgment of the Superior Court must be reversed, for of course no mandamus will lie to a city official or to a city to grant a permit for which there is no proper authority.

*Reversed.*